IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JOSHUA ASAY,<br><br>Plaintiff,<br>v.<br><br>DAGGETT COUNTY, MIKE HADDON, JEFFREY TOONE, ERIK BAILEY, JERRY JORGENSEN, BENJAMIN LAIL, JOSHUA COX, and LOGAN WALKER,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:18-cv-00422<br><br>District Judge Dale A. Kimball |

This matter is before the court on Defendants Mike Haddon, Interim Executive Director of the Utah Department of Corrections, and Jeffrey Toone (collectively "Defendants") Motion to Dismiss. On December 18, 2018, the court held a hearing on the motion. At the hearing, the Plaintiff was represented by John M. Mejia. Defendants were represented by Darin B. Goff and Joni J. Jones. The court took the motion under advisement. Based on the briefing filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

**FACTUAL BACKGROUND**

Plaintiff Joshua Asay filed this lawsuit based on what he describes as "unbelievably inhumane conduct" while incarcerated in the State's custody in the Daggett County Jail.

Asay was assigned to be confined at the Daggett County Jail as part of the Inmate Placement Program. Defendant Jeffrey Toone was assigned to be Asay's case worker. On several occasions, Toone allegedly told Asay that he had to stay at least one year at the Jail before he could be transferred. Asay has been taking prescribed medications related to mental health issues

1

for most of his life. Toone allegedly failed to ensure Asay was given his medications while he was incarcerated at the Jail.

Rather than give prisoners their medications, the County allegedly had a policy and/or practice of refusing to fill prescriptions and even throwing away medications that prisoners brought to the Jail. The County allegedly followed this policy in denying Asay his prescribed medications. Department officials, including Toone, were allegedly aware of the County's policy and practice of refusing to provide medications to prisoners at the Jail. Because Asay's prescriptions were related to mental health, being denied them allegedly made Asay more vulnerable to mistreatment at the Jail.

During 2016 and 2017, Deputy Joshua Cox allegedly participated in constant, extreme physical and emotional abuse of Asay while he was at the Jail. On many occasions, Deputy Cox allegedly singled Asay out for taunting and humiliation, including calling him a "bitch" and frequently denigrating him in front of other prisoners.

On one occasion, Deputy Cox allegedly forced Asay to clean the sally port with his bare hands to humiliate and degrade him. The sally port was the area where prisoners and guards washed cars, so Asay was allegedly exposed to potentially toxic materials.

On another occasion, Deputy Cox ordered Asay to clean a sewer system, despite knowing that Asay may have an extreme negative reaction. Ultimately another prisoner cleaned the system instead to save Asay from a negative reaction.

On another occasion, Asay was working outside of the Jail and Deputy Cox was in his patrol car from the police force he worked for part time. Although Asay claims he did nothing wrong, Deputy Cox allegedly pulled his firearm out of the holster and pointed it in Asay's face.

On other occasions, Deputy Cox allegedly pointed his Taser into Asay's face. In or around August 2016, Deputy Cox and other guards held a barbeque with Asay and other prisoners on the work crew. At that time, Deputy Cox allegedly told Asay that if he refused to be subjected to being shocked by a Taser, Asay would lose his job and his ability to work outside the jail. After this threat, Asay allegedly submitted to Deputy Cox's demands and did not resist Deputy Cox shocking him with the Taser. During this incident, Deputy Cox allegedly shot Asay in the arm with the Taser twice. The electricity caused Asay intense pain and created a significant risk of injury or death. Deputy Walker and another guard allegedly watched Deputy Cox electrocute Asay with the Taser and appeared to enjoy watching Asay endure being shocked. Deputy Cox allegedly shocked other prisoners on this same day as well.

On several other occasions, Deputy Cox would allegedly wrestle with prisoners. Asay allegedly saw Deputy Cox chocking another prisoner, causing Asay to fear for that prisoner's life. To protect the prisoner, Asay pulled Deputy Cox away from him to temporarily immobilize him.

After being subjected to the above abuse, Asay allegedly requested Toone to move him from the Jail.

After the Taser incident, Deputy Cox allegedly falsely accused Asay of stealing items while cleaning an office so that Asay's ability to work would be stripped from him. Once Asay lost his work privileges, he fell into a deep depression and spent most of the day sleeping while at the Jail.

Eventually, in early 2017, two investigators from the Department interviewed Asay about the alleged abuse. After Asay revealed his experiences, he was transferred to the Summit County Jail.

In approximately October 2017, while on a work crew from the Summit County Jail, Asay stepped on a nail and was transported for a tetanus shot. Asay received a shot and one pill. Additionally, a prescription was written for additional medicine, but Asay was denied his medication.

In October 2017, Asay had a very swollen and abscessed tooth. Asay had alerted Jail administrators and asked to see a dentist. Jail officials allegedly ignored Asay's request. Asay allegedly eventually popped the swollen area of his mouth and drained it himself causing excruciating pain.

In 2017, Sheriff Jorgensen was criminally charged and pleaded guilty to a charge related to failing to properly monitor the Jail after sending prisoners back to the Jail via the inmate placement program. Sheriff Jorgensen allowed a policy and practice that can be summed up as "if it wasn't on camera, it didn't happen." The County's policy and practice at the Jail since 2014 was to allow supervisors and staff to engage in abuse as long as they were not recorded by Jail cameras when doing so.

When Asay was released from State custody he obtained employment that involved climbing towers. After some time, Asay became unable to continue employment due to numbness in his hand. Asay alleges that the numbness was exacerbated by the physical abuse he endured in the Daggett County Jail.

## LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

When considering a motion to dismiss for failure to state a claim, all well-pleaded facts are presumed to be true, but conclusory allegations need not be considered. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

## DISCUSSION

Defendants Mike Haddon, Interim Executive Director of the Utah Department of Corrections, and Jeffrey Toone jointly move the court to dismiss Asay's Complaint. Asay allegedly suffers from continuing emotional damages directly caused by the abuse to which Defendants subjected him. Defendants seek to dismiss Asay's claims for: 1) §1983 Violation of Eighth Amendment against Toone and interim Director Haddon in his official capacity; and 2) Article I, Section IX of the Utah State Constitution against Toone and interim Director Haddon in his official capacity for excessive rigor.

Defendants argue: 1) Defendant Toone is entitled to qualified immunity on Plaintiff's § 1983 Claims; 2) Asay's Complaint fails to state an unnecessary rigor claim; and 3) Asay's Complaint fails to state a plausible claim for injunctive relief.

1) **Asay Has Stated Claims for Violations of His Eighth Amendment Rights and Defendant Toone is Not Entitled to Qualified Immunity on Plaintiff's § 1983 Claims.**
   (i)     **Eighth Amendment Failure to Protect.**

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). Not every injury suffered by an inmate implicates the Eighth Amendment. Rather, the injury must be sufficiently serious, meaning "the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Tenth Circuit has recognized

5

that "[a]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). The Defendants concede that the abuse allegedly committed against Asay by Jail officials satisfies the sufficiently serious requirement.

Asay, however, does not claim that Toone personally abused him. "[Section] 1983 imposes liability for a defendant's own actions." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011). Thus, to state a claim against Toone, Asay must allege an "affirmative link" between Toone and the offensive conduct. *See Perry v. Duborow*, 892 F.3d 1116, 1121 (10th Cir. 2018) (plaintiff required to establish an affirmative link between sheriff and sexual assault by jail guard).

To satisfy the affirmative link requirement, Asay must plead sufficient facts to show the official's "(1) personal involvement; (2) causation, and (3) state of mind." *Id*. at 1221. Personal involvement can be demonstrated by pleading facts showing that an official was "responsible for but failed to create and enforce policies to protect" a prisoner from violence from prison guards. *Id*. The causation requirement can be met by showing that the official "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive [inmates] of [their] constitutional rights." *Id*. Further, a plaintiff must plead facts from which the Court can infer that the Jail official acted with the requisite state of mind, which, in the context of a failure to protect claim, is deliberate indifference. *Id*.

To show deliberate indifference, Asay must plead facts showing (1) that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed];" (2) that the official "actually drew that inference;" and (3) that the official was "aware of and fail[ed] to take reasonable steps to alleviate that risk." *Id*. The deliberate indifference

6

standard "is a subjective and not an objective requirement… It is not enough to establish that the official should have known of the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). Finally, while actual knowledge of the risk may be demonstrated through circumstantial evidence, the risk must be obvious, "so that a reasonable man would realize it." *Latoya v. Salazar*, 516 F.3d 912, 917 (10th Cir. 2008).

On the first prong regarding personal involvement, Toone had a duty to protect Asay from the severe abuse he endured. Toone was a caseworker for the Department of Corrections and he was assigned to be the point of contact between State prisoners housed at the Jail, including Asay, and the Department. Toone, as Asay's caseworker, was tasked with visiting jails on a regular basis and to be the point of contact for prisoners and the Department of Corrections. In 2017, Sheriff Jorgensen was criminally charged and pleaded guilty to a charge related to failing to keep prisoners at the Jail under his case safe since 2014. Sheriff Jorgensen allowed a policy and practice that can be summed up as "if it wasn't on camera, it didn't happen." Toone, as Asay's caseworker, had personal involvement because he had a duty to act if he was found to have knowledge that prisoners were being subjected to inhumane conditions.

On the second prong, the causation requirement can be met by showing that the official "set in motion a series of events that [he] knew or reasonably should have known would cause others to deprive [inmates] of [their] constitutional rights." *Id*. Similarly, the third prong requires that the prison official has the requisite state of mind, which in this instance constitutes reckless indifference.

To show deliberate indifference, Asay must plead facts showing (1) that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed];" (2) that the official "actually drew that inference;" and (3) that the official was "aware

of and fail[ed] to take reasonable steps to alleviate that risk." *Id*. The deliberate indifference standard "is a subjective and not an objective requirement… It is not enough to establish that the official should have known of the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation. *Latoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). "The official's knowledge of the risk need not be knowledge of a substantial risk to a particular inmate, or knowledge of the particular manner in which injury might occur." *Id*. "The standard of culpability necessary to an Eighth Amendment violation is one of deliberate indifference." *Id*. "The standard is subjective, requiring that the official actually be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. "Although deliberate indifference is a subjective inquiry, a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition." *Id*. "If a risk is obvious, so that a reasonable man would realize it, we might infer that the prison official did in fact realize it." *Id*. (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001). "In response, the defendant may present evidence to show that he was in fact unaware of the risk, in spite of the obviousness." *Id*.

Asay alleges that the Daggett County Jail had a lawless culture that promoted a sadistic "anything goes" environment that "if it isn't on camera, it doesn't count," which prevailed at the Jail for years prior to the instances that Asay complains about. Asay argues that although prisoner abuse frequently occurred off camera, the lawless culture was a well-known open secret.

8

Defendant Toone argues that even though prisoners were subjected to deplorable treatment, he was subjectively unaware of the abuse prisoners were being subjected to in the Daggett County Jail. Toone further argues that Asay never informed him of the abuse he was being subjected to, and that Asay only asked to be transferred prisons without providing an explanation.

Asay argues that the risks at the Daggett County Jail were so obvious so that a reasonable man would realize it, and therefore the court can conclude that it is plausible that Toone was in fact aware of the abhorrent prison conditions. Asay pleads that the culture of abuse was well known to Jail staff and prisoners since before he became an inmate at the prison. These facts are supported by the allegations that prisoners were frequently subjugated to needless electroshock by tasers in front of other prisoners as well as other forms of abuse and by the fact that Sheriff Jorgensen was criminally charged and pleaded guilty to a charge related to failing to keep prisoners at the Jail under his care safe since 2014. Based on the facts alleged, it is plausible to conclude that Toone was aware of the obviousness of the risks to Asay and deliberately disregarded those risks. Asay's Eighth Amendment Failure to Protect claim is sufficient to survive a motion to dismiss.

### (ii) Failure to Provide Medication

Asay further argues that his Eighth Amendment rights were violated by being denied his prescribed medication. Asay alleges that the County had a policy and/or practice of refusing to fill prescriptions and even throwing away medications that prisoners brought to the Jail. Asay alleges that he has been taking prescribed medication related to mental health issues for most of his life, and that Department officials, including Haddon and Toone, were aware of the County's policy of refusing to provide prescribed medications.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). However, "inadvertent failure to provide medical care is not enough." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). Rather, the inmate must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Therefore, to state an Eighth Amendment claim for failure to provide medical care, the prisoner must allege: (1) that his medical needs were objectively sufficiently serious; (2) that the prison official possessed a subjectively culpable state of mind (i.e. deliberate indifference); and (3) the inadequate medical care resulted in substantial harm. *Mata v. Saiz*, 427 F.3d 745, 751-52 (10th Cir. 2005).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). "The denial of mental health care can constitute deliberate indifference." *Templeton v. Anderson*, 667 Fed. Appx. 784, 789 (10th Cir. 2015). "But as with other mental health needs, mental health issues must be sufficiently serious." *Id*.

Toone argues that it cannot be established that Asay's medical needs were objectively sufficiently serious because Asay did not allege the exact medication that was withheld. The court finds that Asay's allegations are sufficient to infer that he suffered from a sufficiently serious medical condition. Asay alleges that he had been prescribed mental health medications

for most of his life, that the Toone and Haddon knew that the County had a policy of not providing prisoners with their prescribed medications, and that the County's failure to provide Asay his mental health prescriptions caused him depression and other issues that resulted in substantial harm. Asay's medical needs were objectively sufficiently serious, the prison officials possessed a subjectively culpable state of mind due to their alleged knowledge of the County's policy, and the inadequate medical care resulted in substantial harm. Accordingly, Asay has stated a claim for a violation of his Eighth Amendment rights relating to the County's policy of not providing prisoner's their prescribed medications.

### (iii) Violation of Clearly Established Law.

Toone argues that even if Asay has stated a claim against Toone for §1983 violations, Toone is entitled to qualified immunity because his actions did not violate clearly established law.

Qualified immunity shields government officials from § 1983 damages suits so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006). The Supreme Court has held that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017). Qualified immunity may be denied only if, on an objective basis, it is obvious that no reasonably competent official would have concluded that the actions were constitutional. *Gomes*, 451 F.3d at 1134.

Two elements exist in the qualified immunity analysis. First, whether, under the facts alleged, the government officials violated a constitutional right, and second, whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *D.C. v. Wesby*,

11

138 S. Ct. 577, 589 (2018). Defendant Toone seeks qualified immunity on Asay's claims for a violation of the Eighth Amendment for Failure to Protect and Failure to Provide Medication.

The Supreme Court has repeatedly held that courts should not "define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Rather, the dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Id.* The body of case law should put the unlawfulness of the conduct "beyond debate." *White v. Pauly,* 137 S. Ct. 548, 551 (2017). Asay must "identify a case where an [official] acting under similar circumstances as [Toone] was held to have violated the Constitution." *Perry v. Durburow,* 892 F.3d 1116, 1123 (10th Cir. 2018).

Asay asserts that Toone knew that the Jail had for years been a lawless, anything-goes environment where supervisors viewed Tasers as playthings and encouraged abuse and misbehavior. Asay argues that it is clearly established that when prison officials know of conditions that they have reason to believe will result in assaults against prisoners (including because such an assault has happened before), they can be held liable for being deliberately indifferent to those conditions. *See Tafoya*, 516 F.3d at 921; *Keith v. Koerner*, 707 F.3d 1185, 1190 (10th Cir. 2013). It is also well established that in addition to medical care, prison officials must provide psychological care to prisoners when they need it. *See Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980). Accordingly, Asay's constitutional rights were clearly established and the Defendants are therefore not entitled to qualified immunity.

**2) Asay Has Stated an Unnecessary Rigor Claim.**

Article I, § 9 of the Utah Constitution states in part, "[p]ersons arrested or imprisoned shall not be treated with unnecessary rigor." Although this clause "closely approximates the language of the Eighth Amendment," it has no federal counterpart. *Dexter v. Bosko*, 184 P.3d

592, 595 (Utah 2008). The Utah Supreme Court has had "few opportunities to interpret or apply the unnecessary rigor clause." *Id.* Nonetheless, the Utah Supreme Court has held that the unnecessary rigor clause "'protects [prisoners and arrestees] against unnecessary abuse…that is 'needlessly harsh, degrading or dehumanizing.'" *Id. at 595* (quoting *Bott v. Deland*, 922 P.2d 732, 737 (Utah 1996)). To state a claim for a violation of the unnecessary rigor clause, the violation "'must arise from 'treatment that is clearly excessive or deficient and unjustified, not merely the frustrations, inconveniences, and irritations that are common to prison life.'" *Id.* at 597 (quoting *Bott*, 922 P.2d at 741). When the claim of unnecessary rigor arises from an injury, a constitutional violation is made out only when the act complained of presented a substantial risk of serious injury for which there was no reasonable justification at the time. *Id*. at 597 (quoting *Bott*, 922 P.2d at 741). The conduct at issue, moreover, "must be more than negligent to be actionable." *Id.*

In addition to these requirements, a plaintiff must also establish three elements to support an unnecessary rigor claim: (1) "A flagrant violation of his or her constitutional rights;" (2) "Existing remedies do not redress his or her injuries;" and, (3) "Equitable relief, such as an injunction, was and is wholly inadequate to protect the plaintiff's rights or redress his or her injuries." *Id.* at 597-98 (quoting *Spackman v. Bd. of Educ.*, 16 P.3d 533, 538-39 (Utah 2000)).

As stated earlier, Asay has asserted a flagrant violation of his constitutional rights. However, Asay's § 1983 claims likely serve as existing remedies that redress his injuries. Because this case is early in the litigation process, it is to soon to decide whether Asay's §1983 claims will adequately redress his injuries. Furthermore, there is no equitable relief such as an injunction that will protect the plaintiff's rights or redress his injuries. Accordingly, Asay's claim for unnecessary rigor survives the motion to dismiss. If, after discovery, it is determined that

Asay's §1983 claims adequately redress his injuries then the unnecessary rigor claim will be dismissed at that time.

   3) **Asay's Complaint Fails to State a Plausible Claim for Injunctive Relief.**

"Plaintiffs have the burden to demonstrate standing for each form of relief sought." *Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S. Ct. 1142 (2009). "[T]he fact of past injury does not confer standing to seek prospective injunctive relief without some credible threat of future injury." *Winsness v. Yocom*, 433 F.3d 727, 735 (10th Cir. 2006) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983)). A plaintiff cannot establish standing merely by asserting an injury based on "subjective apprehensions" that the defendant might act unlawfully. *Finstuen v. Crutcher*, 496 F.3d 1139, 1144 (10th Cir. 2007) (citing *Lyons*, 461 U.S. at 107 n.8 (1983)). Actions for injunctive and declaratory relief brought by prisoners challenging prison conditions after their release from prison are moot. *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (citing cases).

Asay has been released from prison and is no longer under any threat of suffering "injury in fact" arising from his conditions of confinement at either state prison or county jail. Accordingly, Asay's claim for injunctive relief fails because he cannot satisfy standing.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is GRANTED in part dismissing Asay's request for an injunction and DENIED on all other claims. (Dkt. No. 26).

Dated this 11th day of January 2019.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge